

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| ASHLEY NICOLE RICHARDSON | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 7:19-cv-08021-LSC |
| UNITED STATES OF AMERICA, | ) | (7:17-cr-00285-LSC-GMB-1) |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM OF OPINION**

This court has for consideration Petitioner Ashley Nicole Richardson's ("Petitioner's" or "Richardson's") motion to vacate, set aside, or correct her sentence filed pursuant to 28 U.S.C. § 2255. (Doc. 1.) The United States has responded in opposition to the motion. (Doc. 7.) For the reasons set forth below, the § 2255 motion is due to be denied and this action dismissed without an evidentiary hearing.

## I.    Background

### A. Trial and Sentencing

On June 29, 2016, an indictment was filed against Richardson for possession with the intent to distribute a mixture and substance containing a detectable amount

of marijuana, a controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) (Count One) and for possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two). (Cr. Doc 1.)[1] Richardson was represented by Attorney Jason Neff. (Doc. 1 at 10.)

On August 24, 2017, during what was supposed to be a suppression hearing, Petitioner asked to withdraw the motion and plead guilty to both counts charged against her. (Cr. Doc. 34 at 2-3.) Petitioner pled guilty to both counts and was allowed to continue on bond until her turn-in date. (*Id.* at 19, 23.)

Judgment was entered against Petitioner on August 29, 2018. (Doc. 27.) Petitioner was sentenced to imprisonment for a period of one day for Count 1 and sixty months for Count 2. (Doc. 27 at 2.) These sentences were to run consecutive to one another and consecutive to any other state sentence. (*Id.*) Petitioner would also be placed on supervised release for 60 months following her release from imprisonment. (*Id.* at 3.) Richardson did not file a notice of appeal, having voluntarily waived her appeal rights, with limited exceptions, in her plea agreement. (Cr. Doc. 19 at 8-9.)

---

[1] "Cr. Doc." refers to an entry on the docket sheet in the underlying criminal case, No. 7:17-cr-00285-LSC-GMB-1.

On June 7, 2019, Richardson filed the present motion seeking to vacate or change an illegal sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.)

Richardson currently remains in custody.

### B.  § 2255 Proceedings

On June 7, 2019, Richardson signed her § 2255 motion, which was filed into the record on June 21, 2019.[2] (Doc. 1 at 13.) Richardson enumerates two grounds on which she contends that she is due relief: first, that her plea was involuntary because she was given inaccurate information, and second, her counsel failed to argue for a sentence below the mandatory minimum. (Doc. 1 at 4-6). While it is not one of the grounds specifically enumerated in her motion, Petitioner also implies her counsel was ineffective for failing to discuss her options regarding appeals. (Doc. 1 at 5, 7, 10.) She asks to have her sentence reduced if not her conviction overturned due to ineffective counsel. (Doc. 1 at 13.)

## II.  Timeliness and Non-Successiveness of the § 2255 Motion

Judgment was entered against Richardson on August 29, 2018. (Cr. Doc. 27.) Richardson filed the instant § 2255 motion on June 7, 2019, within one year after the

---

[2] The Eleventh Circuit applies the "mailbox rule" to deem a prisoner's § 2255 motion to have been filed upon the "date that he delivered it to prison authorities for mailing, presumptively, . . . the day that he signed it." Jones v. United States, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (per curiam).

date which her conviction became final, making her filing timely. *See* 28 U.S.C. § 2255(f)(1). This is her first § 2255 motion, so it is not "second or successive" within the meaning of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See id.* at §§ 2255(h), 2244(b)(3)(A).

## III.   Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are limited. A petitioner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)).

In litigation stemming from a § 2255 motion, "[a] hearing is not required on patently frivolous claims or those which are based upon unsupported

generalizations. Nor is a hearing required where the [movant's] allegations are affirmatively contradicted by the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520-21 (5th Cir. 1979)). However, it is appropriate for the court to conduct an evidentiary hearing if, "accept[ing] all of the [movant's] alleged facts as true," the movant has "allege[d] facts which, if proven, would entitle him to relief." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (quoting *Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir. 1987) and *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)).

## IV.    Discussion

### A. Ineffective Assistance of Counsel

Richardson asserts up to three grounds of ineffective assistance of trial counsel in her § 2255 motion.  Because these assertions are meritless, they will be dismissed without an evidentiary hearing.

Claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion and are therefore not subject to procedural bar for failing to raise them on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim has two components: first, the petitioner "must show that the counsel's performance was deficient;" second, the petitioner "must show that the deficient performance prejudiced the defense." *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984). To satisfy the first component, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The second component is satisfied only when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In examining counsel's performance, the Court should be "highly deferential." *Id.* at 689. The Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The Court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decision[s] about which competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry his burden by offering bare accusations and complaints, but rather "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Where a petitioner fails to show that his counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Where the court does consider this prong, the petitioner must show that counsel's errors were prejudicial and "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This burden is met by establishing by a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors. *Williams v. Threatt*, 529 U.S. 362, 391–93 (2000); *Strickland*, 466 U.S. at 691.

To establish prejudice in the context of a guilty plea, a movant must establish that, but for his counsel's unprofessional errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 53, 59 (1985). In the guilty plea context, there is a strong presumption that an attorney's actions are reasonable: "We recognize that in deciding whether to enter a plea, defense lawyers carefully balance both 'opportunities and risks' without fully knowing the strength of the State's case. Therefore, we must, as we do for all *Strickland* claims, afford 'substantial deference' to a lawyer's strategic choices." *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348–49 (11th Cir. 2015) (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)). "[S]trategic choices made after thorough investigation of law

and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. The defendant must show "that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

> **1. Richardson's claim of ineffective assistance of counsel on the basis that she entered into the plea agreement involuntarily is without merit.**

Richardson's first claim is that she entered the plea agreement involuntarily because of her counsel's "incompetent and faulty advice concerning the waiver of her right to a suppression hearing," denying her effective assistance of counsel. (Doc. 1 at 15.) She claims that "failing to give her accurate information concerning the illegal search and seizure, [her counsel's] performance fell below a reasonable standard and prejudiced [her]." (*Id.*) Her claim is contrary to statements she made under oath at her plea hearing. (Cr. Doc. 34.)

There is a strong presumption that the statements made during a plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). There is no reason that the strong presumption can be overcome by Richardson in this matter. The hearing at which Richardson ultimately entered her guilty plea was scheduled to be

a hearing on the very suppression issue on which Richardson bases her allegations,

an alleged Fourth Amendment violation during the search and seizure of her vehicle.

(Cr. Doc. 34 at 2-3; Doc. 1 at 15.) Once defense counsel informed the Court that

Richardson wanted to withdraw her suppression motion and instead plead guilty, the

Court turned to Richardson herself to confirm this information. (Cr. Doc. 34 at 3-4.)

> THE COURT: Ms. Richardson, I need to talk to you directly about this because I don't want this to come up later that your lawyer didn't do his job because, obviously, he has gotten the Government to bring the witnesses here and we are prepared to do a suppression hearing on this to determine whether or not the evidence should be suppressed.
>
> If you are, in fact, in agreement with your attorney and agree that the motion to suppress should be withdrawn, the oral one, then the evidence won't be suppressed and we will be proceeding with your case either at a guilty plea or trial.
>
> Do you understand that?

> THE DEFENDANT: Yes, Sir.

> THE COURT: Is anybody threatening you, forcing you, or coercing you in any way to get you to do that?

> THE DEFENDANT: No, Sir.

> THE COURT: I can't hear you.

> THE DEFENDANT: No, Sir.

> THE COURT: Do you have any questions you want to ask me about that?

> THE DEFENDANT: No, Sir.

> THE COURT: Are you asking me to allow you to withdraw your motion to suppress to the extent it has been made?

THE DEFENDANT: Yes, Sir.

(*Id.*) This Court ensured that Richardson was choosing to forgo her opportunity to present evidence at a suppression hearing and instead plead guilty of her own free will. Richardson testified under oath that that was the case. The allegations she makes in her § 2255 motion are insufficient to undermine the strong presumption in favor of the statements she made at the hearing.

Moreover, Petitioner admits in her brief that "she spoke [with her counsel] in depth about the violation of her 4th amendment right," and he explained to her that, in her paraphrased words, "if she requested a suppression hearing, she would have to proceed to trial," and her bond would be revoked. (Doc. 1 at 15.) Although she feels that this was "faulty and incompetent advice," she fails to prove that his advice was in fact faulty or incompetent or that his representation fell below "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 669 (1984).

Furthermore, Richardson's counsel clarified in his affidavit that "the Petitioner is correct that on the day of the Suppression hearing [he] had confirmed that the body camera footage had been purged from city storage," and he "explained to the Defendant without that footage that the probability of being successful on the issue of suppression was not very likely." (Doc. 7-1 at 2.) He says that he further explained that

it is a very common practice in Judge Cooglers' courtroom if he hears testimony that would lend himself to believe the Defendant is guilty and that based on the type of charge if that Defendant is likely to receive a sentence then he will not reconsider bond and if the Defendant is out on bond that he is likely to take that person into custody.

(*Id.*) Counsel's advice was well within the bounds of reasonableness. He gave Petitioner his professional opinion on how this Court is likely to proceed based on his experience.

Petitioner has failed to prove that there were unprofessional errors of counsel, and, consequently, she has further failed to prove that, if not for unprofessional errors, her case would have resulted differently. If she believed that counsel's advice was incorrect, she did not have to follow it. She could have proceeded with the hearing, but her counsel's advice, and presumably her decision to follow it, were based on the lack of evidence needed to be successful at a suppression hearing.

Petitioner admits in her § 2255 motion that, absent what she views as her counsel's faulty conduct, "it is unclear whether or not the court would view in light of the events leading to an illegal search had occurred." (Doc. 1 at 15.) Petitioner provides no convincing argument that there is even a probability that the outcome would have been different. She merely speculates that the outcome might have been different, and her speculation relies heavily on video footage that has been purged. (Doc. 7-1 at 2.) Petitioner's counsel even stated that "[he] explained to the

Defendant without that footage that the probability of being successful on the issue of suppression was not very likely." (*Id.* at 2.) He did not tell her in absolute terms how the case *would* turn out. Rather, he informed her of his professional opinion on the likelihood of her success if she continued with the hearing, which does not constitute ineffective counsel and does not fall outside the standards of reasonableness. The court was fully prepared to have the hearing, and her counsel was also fully prepared as demonstrated by having the Government bring witnesses. (Cr. Doc. 34 at 3.) This does not show deficient or prejudicial performance by Petitioner's counsel.

Despite the opportunity to continue with the hearing, Petitioner chose herself to plead guilty and even testified under oath that her attorney did a "great job" and that she had no complaints about his representation. (Cr. Doc. 34 at 7.) Furthermore, when the court asked if anyone was threatening, forcing, or coercing her to plead guilty, she said no. (*Id.* at 3.) Thus, the Court has every reason to believe she made an informed and voluntary decision to withdraw her request for a suppression hearing based on her own admission. Her choice to follow her counsel's advice out of fear that she would have her bond revoked does not mean that the advice was "faulty" or "incompetent." (Doc. 1 at 15.) She was given every chance to go against this advice if she truly believed it was inaccurate. She provides no evidence that the

advice given fell below an objective standard of reasonableness and failed to establish deficient performance by her counsel. For these reasons, her claim fails.

### 2. Richardson's counsel was not ineffective for failing to argue for a sentence below the statutory minimum.

In addition to the claim that her counsel gave her inaccurate advice, Petitioner also contends that her counsel was ineffective in his failure to submit a memorandum for a reduced sentence. She states that "counsel failed to submit a memorandum in support of a sentence appropriate for the offence charged." (Doc. 1 at 6.) Petitioner fails to prove that the sentence given was inappropriate and that her counsel was deficient in performance.

Count One carried a statutory maximum of five years under 21 U.S.C. § 841(b)(1)(D), with a guideline range of zero to six months. (Doc. 25 at 19.) Count Two, however, had a statutory minimum of five years and a maximum of life under 18 U.S.C. § 924(c)(1)(A)(i), and the sentence on Count Two had to run consecutively to any other counts under 18 U.S.C. § 924(c)(1)(D)(ii). (*Id.*) The guideline range for Count Two was 60 months to be serve consecutive to Count One. (*Id.*) Ultimately, Petitioner was sentenced to be imprisoned for one day as to Count One and sixty months as to Count Two to run consecutively. (Cr. Doc. 27 at 2.) This sentence aligned with the sentencing recommendation as well as the statutory and guideline provisions (Cr. Doc. 26, Cr. Doc. 25 at 19), but Petitioner believes that her

counsel's performance was deficient for not arguing for a "safety valve," or a sentence below the mandatory minimum (Doc. 1 at 17).

In order to receive a sentence below the mandatory minimum, the defendant cannot have used "violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." U.S.S.G. § 5C1.2. Petitioner fails to acknowledge this provision in her claim that her counsel should have argued for a sentence below the mandatory minimum. She mentions the provisions that discuss "criminal history, family background, and characteristics." (Doc. 1 at 16.) The fact that she was convicted of the possession of a firearm in furtherance of drug trafficking, however, automatically excludes her from qualifying for a sentence under the mandatory minimum. Her claim that "based on the factors set under 3553, a sentence below the mandatory minimum could have been imposed" is clearly erroneous. (Doc. 1 at 16.)

Petitioner also received the mandatory minimum of sixty months for Count Two. According to her counsel's affidavit, "she attempted to be an informant for the Federal Government," but "none of the information she supplied ever became useful to the authorities and their investigations." (Doc 7-1 at 2.) Counsel explained in his affidavit that "she could have received a lower sentence by a recommendation of the Government under 5K1.1," but that possibility did not materialize because

"she never did follow though with her full cooperation." (Doc. 7-1 at 2.) Thus, the lack of a recommendation for a lower sentence was not due to ineffective counsel, but rather her failure to uphold her end of the agreement. Her counsel explains, "There was not a need [to] file [a] sentencing memorandum since the parties agreed she would receive the low end and or the mandatory minimum." (Doc. 7-1 at 2.)

In regard to her drug charge, she asserts that "the amount of drugs attributed to her at sentencing should have been objected to by counsel. (Doc 1 at 16.) She further asserts that "the weight nor the controlled substance should not have been attributed [to her] for sentencing nor for a conviction." *Id.* The PSR explains that Petitioner handed over "49 baggies of marijuana, 38 baggies of synthetic marijuana, and a digital scale" to officers. (Cr. Doc. 25 at 6.) Petitioner bases her argument on a statement in the PSR that "[t]he lab was unable to verify the contents of the baggies of synthetic marijuana, but weighed the substance as 17.178 grams." Petitioner neglects to mention the preceding statement from the PSR, "The Alabama Department of Forensic Sciences confirmed that the 49 baggies contained marijuana weighing a total of 62.842 grams." Whether the quantity of drugs attributed to her was correct, the sentencing provisions in 21 U.S.C. § 841(b)(1)(D), under which Petitioner was sentenced, apply in cases "of less than 50 kilograms of marihuana." The 17.178 grams alleged to be synthetic marijuana does not change the statutory

sentencing range, and the low end of the guideline range that applied was zero, so accounting for a lower attributable amount of marijuana could not result in a lower guideline range. (Cr. Doc. 25 at 19.) Moreover, Petitioner was only sentenced to a single day on Count One, the lowest possible sentence "because the low end is zero months for count one, and because that would be equivalent to a probation sentence and cannot be served on probation because she's also getting a custodial sentence." (Cr. Doc. 33 at 5.)

Nevertheless, whether the lab was able to verify the contents of the baggies, the plea agreement that she signed stated that "she admitted, post *Miranda* warnings, she had drugs hidden in her pants and she retrieved the drugs for the officers." (Cr. Doc. 19 at 3.) At sentencing, Plaintiff also verified that by signing the plea agreement she was "acknowledging, stipulating, and agreeing that the factual basis that precedes [her] signature is true and correct." (Cr. Doc. 34 at 16.) There is a strong presumption that these statements are true, and if not, Petitioner bears the burden to show they were false. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) and *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). Petitioner has failed to meet that burden.

For the reasons set forth above, Petitioner cannot demonstrate that her counsel was ineffective for failing to argue for a sentence below the mandatory

minimum or for failing to challenge the quantity of drugs attributable to her at sentencing. Therefore, Petitioner's claim fails.

### 3. Richardson's counsel was not ineffective for failing to discuss her appeals options.

While it is not one of the grounds which Petitioner discusses in her memorandum, she does hint at the idea that her counsel was ineffective for failing to discuss her right to appeal with her. Multiple times throughout the motion she states her "counsel never discussed an appeal with [her]" and "COUNSEL NEVER EXPLAINED THAT AN APPEAL COULD BE FILED." (Doc. 1 at 5, 7, 10.) It is unreasonable, though, to believe that Petitioner was unaware of her ability to appeal.

A criminal defense lawyer is not under a *per se* constitutional obligation to consult with his or her client about an appeal. *Otero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007). The Eleventh Circuit has found that there is only a "constitutionally imposed duty to consult with the defendant about an appeal when there is a reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). In determining whether there was a duty to consult, courts should consider (1) whether the conviction follows a guilty plea, (2) whether the defendant received the sentence he or she

bargained for, and (3) whether the plea agreement expressly waived some or all appeal rights. *Id.* Guilty pleas tend to indicate that the defendant is "interested in 'seek[ing] an end to the judicial proceedings.'" *Otero*, 499 F.3d at 1270 (quoting *Flores-Ortega*, 528 U.S. at 480).

In this case, Petitioner's counsel had no reason to believe that his client would want to appeal, nor did his client ever demonstrate an interest in appealing. In fact, according to her counsel's affidavit, "never once did the Defendant request a meeting to discuss the post judgement options if any." (Doc. 7-1 at 3.) Additionally, she received the lowest possible sentence for her charges, or what would be considered the "bargained-for" sentence. Based on the colloquy between Petitioner and the Court during her plea hearing, she was aware of what rights she retained regarding appeals after signing her plea agreement. (Cr. Doc. 34 at 15-17.) Petitioner clearly waived her right to appeal her sentence so long as it was within the "guideline sentencing range determined by the court at the time the sentence [was] imposed." (Cr. Doc. 19 at 8-9.) The only challenge to her sentence that Petitioner could bring was in the form of ineffective counsel, which she has done here. No rational person would expect a person in Petitioner's position – pleading guilty and receiving the lowest end of the guideline range possible – to want to appeal, even if she had not waived her right; therefore, Petitioner's counsel was not ineffective and did not

prejudice her. He merely acted within objective bounds of reasonableness giving his professional opinion and did not fail to meet his responsibilities regarding potential appeal.

In the transcript from her plea hearing, the Court made sure that Petitioner was aware of the rights she was giving up, including the right to appeal except in certain circumstances. (Cr. Doc. 34 at 16-17.) The Court also explained to Petitioner during her sentencing that she had "the right to appeal the sentence imposed within fourteen days if [she] believe[d] it is in violation of the law." (Cr. Doc. 33 at 8.) She, again, acknowledged that she understood her rights as the Court explained them. *Id.*

Petitioner does not contend that her counsel refused to file a notice of appeal after she made such a request. Instead, she asserts only that counsel never told her that she could appeal. (Doc. 1 at 5, 7, 10.) She stated under oath, however, that her counsel went over the plea agreement with her, which included the appeal waiver and its exceptions. (Cr. Doc. 34 at 15.) Moreover, the Court explained that Petitioner had 14 days to file an appeal at her sentencing hearing. (Cr. Doc. 33 at 8.)

Accordingly, Petitioner has failed to demonstrate that her counsel was ineffective for failing to explain her appeal rights, and to the extent that her statements suggest a claim for relief under § 2255, it is due to be denied.

## V.   Conclusion

For the foregoing reasons, Richardson's §2255 motion to vacate, set aside, or correct a sentence is due to be denied.

Additionally, to the extent this dismissal necessitates a ruling on the certificate of appealability issue, one will not be issued by this Court. Rule 11 of the Rules Governing § 2255 Proceedings requires the court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See* Rule 11, Rules Governing § 2255 Proceedings. This Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484 (2000)). This Court finds that Richardson's claims do not satisfy either standard. Accordingly, insofar as an application for a certificate of appealability is implicit in Richardson's motion, it is due to be denied.

A separate order consistent with this opinion will be entered.

**DONE** AND **ORDERED** ON JULY 12, 2022.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

206728